# HENRY C. GRAY *et al.*

### *v.*

# THE SUSPENSION CAR TRUCK MANUFACTURING COMPANY.

*Filed at Ottawa January 25, 1889.*

1. SPECIFIC PERFORMANCE—*change of conditions of contract by parol.* The owner of a tract of land entered into a written contract with a manufacturing company, wherein he agreed to convey to the latter five acres thereof when it should locate its factory thereon and expend $30,000 in buildings, etc., by a time given, and upon payment of $15,000 in money. The contract authorized the land owner to declare the contract void if the company should not expend $5000 by the first day of the then next October. On September 16 the parties mutually agreed, verbally, to modify the contract, extending the time for the expenditure of the $5000 one month, and substituting another five acres in the same tract. No forfeiture was ever attempted to be declared for not expending this sum by the time agreed on. The company in good faith entered upon the land, located its shops, etc., thereon, and expended at least $37,000 on the land, in improvements: *Held,* that under the facts the company was entitled to a decree for the specific performance of the contract.

2. RESCISSION OF CONTRACT—*for non-performance.* The owner of land, through his trustee holding the legal title, entered into a written agreement with a manufacturing company for the donation of a part of the land, to be used for shops, etc., in which it was provided, "that if the said company shall locate and construct upon the said tract of land" therein "described, the shops, buildings, plant and improvements aforesaid therein agreed to be constructed during the year ending on the first day of July, 1885, at an outlay of $30,000, a certain deed," (describing it,) "deposited in escrow for that purpose with G., shall be delivered to the said grantee therein named," (the company,) "and shall take full effect as of the day of its date." The agreement also contained a proviso in regard to the payment of $15,000 to G. by the company, if not paid by others, and gave the trustee power to declare the contract void if the company failed to place on the land $5000 worth of labor and materials by a day named. The company paid G. the $15,000 and expended $30,000 within the time agreed, but did not expend the $5000 until after the time fixed. No forfeiture was ever declared on that account. The equitable owner of the land filed his bill to set aside the deed left in escrow, and to compel his trustee to convey to him: *Held,* that his bill was properly dismissed.

3. *Mere false representations of an intention,* not amounting to a matter of fact, is no excuse for non-performance. Such misrepresentation will not justify a rescission of a contract, or a refusal to decree a specific performance.

4. VARYING WRITTEN CONTRACT—*by parol—only for fraud, etc.* Where a bill to set aside an agreement to convey land fails to allege that the execution of the writing was obtained by misrepresentation and fraud, the writing must be accepted as the only evidence of the contract between the parties.

5. BURDEN OF PROOF—*alleged change of contract by parol.* On bill for the specific performance of a written contract to convey land, if the defendant sets up a subsequent change of the terms of the contract, whereby the complainant agrees to perform further conditions to entitle him to a deed, the burden of proof will rest on the defendant to establish such modification.

APPEAL from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

This was a bill in equity, by appellants, against appellees, in the circuit court of Cook county, to compel Henry F. Eames, who held the legal title to a tract of land therein described, to convey the same to appellants. After some preliminary negotiations, a contract was entered into on the 10th day of June, 1884, as follows:

"*Know all men by these presents,* That whereas, by certain articles of agreement made and entered into this 10th day of June, A. D. 1884, by and between the Suspension Car Truck Manufacturing Company, a corporation organized under the laws of the State of New York, as party of the first part, and Franklin D. Gray, of the city of Chicago, county of Cook and State of Illinois, as party of the second part, the said corporation covenanted and agreed, among other things, to locate and construct upon the premises known as the E. ½ of the S. ½ of the N. W. ¼ of the N. W. ¼ of section sixteen (16), township thirty-eight (38), N. of R. fourteen (14), E. of the 3d P. M., in the said county of Cook, excepting therefrom a strip of land thirty-three (33) feet in width from the east side of said premises, the main construction and repair shops of said Suspen-

sion Car Truck Manufacturing Company for the Northern and Western States, and operate the same upon the said premises for a period of not less than ten (10) years from and after the date of said articles.    And further, that the buildings, machinery, fixtures and appurtenances, including the entire manufacturing plant and improvements to be placed upon said land during the year ending on the first day of July, A. D. 1885, should aggregate an actual cash outlay to the said corporation of not less than thirty thousand (30,000) dollars, and that during the three (3) years next ensuing said last named date, a further actual cash outlay should be made in the construction of buildings, machinery and plant for manufacturing purposes, upon the premises aforesaid, by the said company, or by its successors or assigns, aggregating a further actual cash outlay of not less than thirty thousand (30,000) dollars, making a sum of not less than sixty thousand (60,000) dollars to be expended for improvements upon said premises. And further, that all such buildings should be of a permanent and substantial character, and the walls thereof brick, stone, iron or other fire-proof material, and built in a workmanlike manner.    And further, that the said company agreed not to use, or permit the use of, said premises, during said period of ten (10) years, for any purpose other than as shop grounds for manufacturing purposes, and would not, during said period of ten (10) years, sell, convey or lease said premises, or any parcel thereof, for residence purposes.

.''And whereas, it was and is further agreed in said articles, between the said Gray and the said company, that if Charles W. Rigdon and Frederick S. Eames, or one of them, do not pay, or cause to be paid, to the said Franklin D. Gray, his representatives or assigns, the sum of fifteen thousand (15,000) dollars, with interest at the rate of six per cent per annum from the first day of July, 1884, the said company would pay to the said Gray the sum of fifteen thousand (15,000) dollars, and interest, on or before said day, to be in full satisfaction,

with the construction of the improvements aforesaid, of the consideration moving to said Gray for the purchase of the land aforesaid.

"And whereas, it is the intention of the parties to these presents, that in case the said Suspension Car Truck Manufacturing Company is compelled to pay the said Gray the said sum of fifteen thousand (15,000) dollars, and interest, the land hereinafter mentioned shall be conveyed to said company, absolutely, and in satisfaction for the advance and payment required to satisfy the said claim of said Gray for the purchase money of the tract first herein described, it being fully understood and agreed that in that event the said Chisholm, president of said company, shall be the purchaser and grantee of both said five-acre tract and said first named tract, upon full consideration paid said Gray and Eames, respectively, absolutely and according to the form and purport of said deeds:

"Now, therefore, in consideration of the said premises, and of one dollar paid by said company to said Eames, the said Eames covenants and agrees with said company, its successors and assigns, and with said Chisholm, his heirs and assigns, that if said company shall locate and construct upon the said tract of land first above described, the shops, buildings, plant and improvements aforesaid therein agreed to be constructed during the year ending on the first day of July, 1885, at an outlay of thirty thousand (30,000) dollars, a certain warranty deed, of even date herewith, from the said Eames and wife to James W. Chisholm, president of the said Suspension Car Truck Manufacturing Company, conveying the five acres of ground in said section seventeen (17), described as follows, to-wit: The S. E. five (5) acres, in a square form, of the south-east quarter of the north-east quarter of the north-east quarter of section seventeen (17), T. 38 N., R. 14, east of the 3d P. M., deposited in escrow for that purpose with Franklin D. Gray, shall be delivered to the said grantee therein named,

and shall take full effect as of the day of its date: *Provided, however,* that if, on or before the first day of July, 1885, the said Eames and Rigdon, or either of them, shall have paid to said Gray the said sum of fifteen thousand (15,000) dollars, and interest to the date of such payment, so that the said company shall hereby have been relieved from such payment as between it and said Gray, then said escrow shall be returned by said custodian, undelivered and of no effect, to the said Eames.    It is further agreed, however, that in case by the first day of October, 1884, the said Suspension Car Truck Manufacturing Company shall not have placed labor and materials upon said first named tract, in the construction of said buildings, to the amount of at least five thousand (5000) dollars, these presents, at the option of said Eames, shall be null and void, and be, at his request, surrendered to him as of no effect, together with said deed so placed in escrow.

(Signed)          FREDERICK S. EAMES,
(Signed)          SUSPENSION CAR TRUCK MANF. Co.,
                          By J. W. Chisholm, Pres.,
(Signed)          J. W. CHISHOLM."

It is alleged in the bill, "that said company wholly failed to carry out and fully perform the covenants and agreements on its part to be performed to entitle it to the deeds of conveyance from Frederick S. Eames, as aforesaid, deposited in escrow; that said company did not, by October 1, 1884, place labor and material on said premises in section 16, in the construction of buildings, to the amount of $5000; that it wholly failed to locate and construct on the first mentioned premises its main construction and repair shops for the Northern and Western States, and wholly failed to expend, in actual cash, an outlay of $30,000 during the year ending July 1, 1885, on its shops, etc., to be located on said premises; that said company falsely and fraudulently pretended that the time within which the covenants and agreements were to be performed was extended, by verbal agreement made with the said Fred-

erick S. Eames, and that they have fully performed and kept all of said agreements by it to be kept, and have caused said agreement between Frederick S. Eames and said company and said Chisholm to be recorded in the recorder's office of Cook county, Illinois, and have demanded of said Eames said agreement and deed now deposited in escrow, as aforesaid, to be delivered up to become operative as a conveyance to the premises therein described; that the claims of said company are false and fraudulent; that it has wholly failed to perform the covenants and agreements by it to be performed and kept to entitle it to the delivery of said conveyance in escrow; that its pretended claim as to the extension of time aforesaid is false and fraudulent, and made with the intention to harass orators, and that the recording of said articles of agreement, as aforesaid, is a cloud on the title of orators, and has the effect greatly to depreciate the value thereof, and prevent orators from making a sale of the same. The prayer is, that said agreement be declared null and void, and as a cloud upon the title of orators be removed and delivered up to be canceled; that such deed in escrow also be declared null and void, and delivered up and canceled, and that said Henry F. Eames be ordered to deed to orators one-half of said forty-eight lots, and such other and further relief," etc.

Answer was filed, putting in issue the allegations of the bill, and the Suspension Car Truck Manufacturing Company thereafter filed its cross-bill, alleging performance of the contract, and praying that Eames convey the five acres therein described to it. Answer was filed denying its material allegations. On hearing, the court below dismissed the original bill, and decreed in favor of the prayer of the cross-bill.

The decree recites the execution of the contract before herein recited, and finds "that on or about September 16, 1884, by mutual agreement of parties to said agreement, said agreement was modified in respect to giving said company additional time for expenditure of $5000 till the first day of November,

1884, and the premises in said deed in escrow described as the south-east five acres, in a square form, of the south-east quarter of the north-east quarter of the north-east quarter of section 17, township 38 north, range 14, east of third principal meridian, were changed, so that the land to be conveyed to said company was described as that portion of the north-east quarter of the north-east quarter of said section 17 bounded as follows, viz.:  On the south by the north line of Fifty-seventh street; on the east by the west line of Halsted street, extending from the corner of Halsted and Fifty-seventh streets north about $169\frac{44}{100}$ feet; thence of the same width, including seven lots, less a fraction of a lot, in depth, across the west boundary of said north-east quarter of the north-east quarter, so as to include therein five acres,—which was to be conveyed as in said original agreement provided, in lieu of the five acres in square form described in said deed held in escrow; that after the making of the modification of said agreement, said company proceeded to, and did, in good faith, carry out and perform all of the undertakings on its part to be performed; that since the making of said original contract, said north-east quarter of the north-east quarter above described, and including the premises in controversy, was conveyed to Lester H. Eames, by him subdivided into lots, blocks, streets and alleys, and by said Lester H. Eames the premises in controversy were conveyed, as follows:  Under the description of lots and blocks, to said Henry F. Eames, lots 19 to 30, inclusive, in block 5, lots 19 to 30, inclusive, in block 6, lots 18 to 31, inclusive, in block 7, lots 19 and 30, in block 8, in Eames' subdivision of said north-east quarter of the north-east quarter of said section 17; and to said defendant in cross-bill, Henry C. Gray, lots 18 and 31 in block 5, lots 18 and 31 in block 6, lots 18 and 31 in block 8, in the same subdivision as last above mentioned; that said Henry C. Gray made a trust deed to said Henry F. Eames, covering the last mentioned lots, which was duly recorded; that the legal title to said lots first above de-

scribed stands in said Henry F. Eames, and the legal title to the lots last described stands in said Henry C. Gray, subject to said trust deed, but that said Lester H. Eames, Henry C. Gray and Henry F. Eames, at the times of making the several conveyances vesting the legal title in them, respectively, had full notice and knowledge of all the rights and equities in said premises of said complainant in the cross-bill, and received said conveyances subject thereto, and said Henry F. Eames and Henry C. Gray now hold the title to said lots in trust for said complainant in the cross-bill."

The complainants appealed to this court, and assigned errors bringing in question the different rulings of the circuit court.

Mr. HENRY S. MONROE, for the appellants:

The company failed to put its works in operation. The consideration which moved Eames to agree to convey the five acres of land had absolutely failed when the suit was brought. The decree below takes this five acres for absolutely nothing.

Specific performance will be refused if there is anything that makes it unconscionable from a change of circumstances, as, lapse of time, or otherwise. *Kimball* v. *Tooke,* 70 Ill. 553; *Harrison* v. *Polar Star Lodge,* 116 id. 279.

The contract must be founded upon a consideration, fair, reasonable and valuable. If it be such that justice revolts at it, it will not be enforced, even though it be binding at law. *Lear* v. *Choteau,* 23 Ill. 39; *Stone* v. *Pratt,* 25 id. 25; *Webb* v. *Fire Ins. Co.* 5 Gilm. 223.

Specific enforcement will not be granted unless the contract has been entered into with perfect fairness, and without misrepresentation or misapprehension, or when it would be unjust or inequitable to enforce it. *Fish* v. *Leser,* 69 Ill. 394.

If any unfairness or reprehensible means are used to obtain a contract, it will not be enforced. (*Taylor* v. *Merrill,* 55 Ill. 52; *Kelly* v. *Kendall,* 118 id. 650.) The same is true if the

contract is itself unfair or unjust. *Proudfoot* v. *Wightman,* 73 Ill. 553.

A court of equity will not enforce a contract tainted with fraud or into which fraud has entered, or where wrong or injustice would be done, or where it would be inequitable or work a hardship. *Ryan* v. *Ryan,* 97 Ill. 38; *Hetfield* v. *Willey,* 105 id. 286.

A contract will not be enforced if its enforcement would permit one party to reap an advantage not just to the other. *Harrison* v. *Polar Star Lodge,* 116 Ill. 279.

Mr. JEREMIAH LEAMING, and Mr. R. S. THOMPSON, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The correctness of the ruling of the court below in dismissing the original bill, depends upon what the car truck company was required to do, by the terms of the written contract, to entitle it to a deed. The writing is explicit in that respect. It says: "That if said company shall locate and construct upon the said tract of land first above [therein] described, the shops, buildings, plant and improvements aforesaid therein agreed to be constructed during the year ending on the first day of July, 1885, at an outlay of thirty thousand (30,000) dollars, a certain deed, [describing it particularly,] deposited in escrow for that purpose with Franklin D. Gray, shall be delivered to the said grantee therein named, and shall take full effect as of the day of its date." The proviso in regard to the payment of $15,000 by Eames and Rigdon, and the further proviso authorizing Eames to declare the contract void for the not placing of $5000 worth of labor and materials upon the designated tract of land in the construction of the buildings, are irrelevant to the question, because it is admitted that Eames and Rigdon did not pay the $15,000, and the car truck company did pay it. And it is also admitted that Eames

did not elect to declare the contract void for the not placing of $5000 worth of labor and materials upon the designated tract of land in the construction of the buildings.

There is no allegation in the original bill that the execution of the writing was obtained by misrepresentation and fraud, and in the absence of such an allegation the writing must be accepted as the only evidence of the contract between the parties. The consideration for the execution of the deed is one thing, but the conditions to be performed precedent to its execution are other and entirely different things.

The original bill proceeds entirely upon the ground that the car truck company did not perform its part of the agreement with respect to the execution and delivery of the deed, and it was therefore incumbent on it to prove that the company did not locate and construct the shop buildings, etc., at an outlay of $30,000, during the year ending on the first day of July, 1885, as provided by the contract. It is not seriously contended that such proof was made, and it admits of no controversy that the evidence preserved in the record proves directly the reverse.

More difficulty is presented by the decree granting the prayer of the cross-bill. It is therein found, that on the 16th of September, 1884, the parties to the agreement set out in the original bill mutually agreed that the time for placing the $5000 of labor and materials upon the designated tract, to be used in the construction of said buildings, was extended from the first day of October to the first day of November, 1884, and the premises described in the deed in escrow were changed, so that the land to be conveyed is, instead of that described in the deed in escrow, "that portion of the north-east quarter of the north-east quarter of section 17, bounded as follows: On the south by the north line of Fifty-seventh street; on the east by the west line of Halsted street, extending from the corner of Halsted and Fifty-seventh streets north about $169\frac{44}{100}$ feet; thence of the same width, including seven lots, less a fraction

of a lot, in depth, across the west boundary of said north-east quarter of the north-east quarter, so as to include therein five acres." Both parties claim that there was a mutual agreement on the 16th of September, 1884, whereby the time was extended, in the respect mentioned, from the first day of October until the first day of November, 1884, and they agree that the land to be conveyed was also changed from that described in the deed in escrow, but they differ as to the description of that to be conveyed in lieu of it,—appellees contending that it is to be measured as recited in the decree, and appellants contending that it is to be as thus recited, with this exception: that the south line should be the center line, instead of the north line of Fifty-seventh street. But appellants further contend, that by this agreement Eames was not to execute and deliver the deed until the car truck company had complied with its contract in respect to the erection of buildings, etc., and had also proceeded to manufacture car wheels, employing at least three hundred men in the business. Appellees deny that there was any such agreement.

The contention of appellants is sworn to by two witnesses. It is denied by two witnesses with equal opportunity of knowledge, and, in our opinion, the latter are, to some extent, corroborated by circumstances. Chisholm, the president of the company, emphatically denies it, and Raymond, who was at the time attorney for the company, testifies that an agreement was made between the parties, and that on the same day, and immediately afterwards, he reduced it to writing, and sent a copy to Eames, asking him if it was correct, and that Eames made no reply. He is corroborated as to the reducing of the agreement to writing, by Chisholm, and it is not denied by Eames that the copy was received by him. The making of this writing was so soon after the making of the agreement that it excludes the idea that Raymond had forgotten. If it was not correct, it was either because he did not understand the agreement, or it was made incorrect willfully. There is

no apparent motive why he should willfully have misstated the terms of the agreement. He is evidently disinterested, and it is hardly to be supposed that he could have been mistaken.

The writing of Raymond directly contradicts the two witnesses on behalf of appellants. But counsel for appellants insist that Raymond's testimony shows that negotiations between Eames and himself were continued after the letter was written and sent by him, and that Eames declined to make any further agreement or sign any contract in the matter, but said he would do what was right if the other part of the contract was carried out. This is very true, but it has relation entirely to an attempt upon the part of Raymond to get subsequent modifications of the contract. He expressly states that it had no reference to the agreement made on the 16th of September, 1884. A circumstance corroborative is, that the Eames employed Mr. Whiton as their attorney in this matter, and in attempting to adjust the differences between the parties, he made no claim that the execution of the deed was to be postponed, as it is now contended by appellants that it was, and proposed an adjustment entirely excluding that idea.

There was a dispute, as before observed, whether the deed should include or exclude one-half of Fifty-seventh street, making a difference of one acre of ground, or about that. This, of course, was subsequent to the agreement of the 16th of September, 1884. That dispute, it is shown, led to warmth of feeling, and, probably, bitterness of expression, and it was not until after the 16th of September, 1884, as we understand the evidence, that the circumstances occurred which seemed to have begotten distrust in the minds of the Eames as to the success of the company's enterprise; and so, it is readily discernible that the Eames may have forgotten the time when they first insisted that the deed should not be delivered until after the company was manufacturing, with three hundred hands, etc. This is the most charitable view to take of the evidence. The evidence is satisfactory that the extension of

time from October 1 to November 1 was not regarded by the company as vital, but as a matter of convenience, only; and the change of the five acres from that described in the deed, to a different location, was regarded as desirable by Eames,— certainly as much so as the extension of time was by the company. Mr. Frederick Eames testified that he requested Chisholm to put in the original contract his representation that the company would employ and continue in employ three hundred men, but Chisholm declined to do so, alleging that he did not want to bind the company to always have this business, for a period of ten years. The result was, the company did not, by that contract, bind itself to employ that number of men for any time. It would have been strange,—quite inconsistent,—that he should, subsequently, in order merely to obtain an extension of time for one month for the expenditure of $5000 in labor and materials in the buildings, have consented, in addition to the change in the description of the property conveyed, to this postponement of the execution and delivery of the deed. Somebody is mistaken, or there has been perjury. It is most charitable to suppose somebody has been mistaken in this matter, and if so, we think the evidence preponderates that the mistake is with the witnesses on behalf of appellants, in assigning a wrong time to the commencement of a claim they now insist upon, as to this change in the agreement, and have, undoubtedly, heretofore insisted upon as to proposed changes in the agreement, but which changes were never made.

It is contended the evidence shows misrepresentation and fraud as to the consideration of the agreement decreed to be specifically executed. We are unable to say that the evidence sustains this contention. We have found no evidence of the misrepresentation of an existing fact which we can say would justify a rescission, and hence a refusal to decree performance of the contract. Mere false representation of an intention, not amounting to a matter of fact, is no excuse for non-per-

formance.   Kerr on Fraud and Mistake, (Bump's ed.) p. 88;
Fry on Specific Performance, (new Am. ed.) p. 150, sec. 191.
The failure of the company to proceed in manufacturing, two
witnesses, Messrs. Chisholm and Barnum, testify, is solely
because of the failure of these appellants to do what they con-
tracted to do.   While there is some evidence of the insolvency
of the company, there is evidence directly to the contrary.

It is said the case is one of failure of consideration.   That
is hardly accurate.   The consideration was the erection of the
buildings, etc., at the cost of $30,000, by the first of July, 1885,
and the payment of $15,000 to Franklin D. Gray by the com-
pany,—all of which was done.   The motive influencing Eames,
doubtless, was the anticipated benefits to result to his other
property from the successful operation of a factory of this
character in proximity to it.   But he made no conditions in
the contract in that respect, and mere expressions of opinion,
hope, expectation and the like, relating to matters which, from
their nature, situation or time, as here, can not be supposed
to be within the knowledge or under the power of the party
making the statement, do not justify the party to whom they
are made, to rely upon and assume them to be true.   2 Pom-
eroy's Eq. sec. 891.

We are unable to say that the court below erred in its find-
ings of fact, or in the decree it rendered.   The decree is affirmed.

*Decree affirmed.*

Mr. JUSTICE BAILEY:   I am unable to concur in this decision.